# In the United States Court of Federal Claims

No. 17-916C
(Filed: November 29, 2017)

|  |  |  |
|---|---|---|
| SPENCER T. LYNCH, | ) | Keywords: Subject Matter Jurisdiction; |
|  | ) | Statute of Limitations; 28 U.S.C. § 2501; |
|  | ) | Accrual Suspension; Corrections Board; |
| Plaintiff, | ) | Military Promotion. |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| THE UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

*Jonathan W. Crisp*, Crisp and Associates, LLC, Harrisburg, PA, for Plaintiff.

*Daniel K. Greene*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiff Spencer Lynch served in the United States Coast Guard until he retired in 1998. In 1996, his commanding officer removed him from the Coast Guard's advancement list. As a result, Mr. Lynch was denied promotion to a higher rank.

In 2001, Mr. Lynch sought relief from the Coast Guard's Board for Correction of Military Records, which ruled in his favor and ordered correction of his records. The Secretary of Transportation's designee, however, rejected the Board's decision shortly afterward. Sixteen years later, in July 2017, Mr. Lynch filed the present suit, challenging the Secretary's rejection of the Board's recommendation and the Coast Guard's underlying decision to remove Mr. Lynch from the advancement list.

Currently before the Court is the government's motion to dismiss for lack of subject matter jurisdiction. For the reasons set forth below, the Court agrees with the government that Mr. Lynch's claims are barred by the statute of limitations and the Court therefore lacks subject matter jurisdiction over his complaint. The government's motion to dismiss is therefore **GRANTED**.

BACKGROUND[1]

I.      Mr. Lynch's Removal from the Advancement List

Mr. Lynch joined the Coast Guard in November 1977. Compl. Ex. 2 at 1, ECF No. 1-2. By 1995, Mr. Lynch was serving as a Boatswain's Mate First Class. See id. at 2; see also Compl. ¶ 8, ECF No. 1. In 1995, he passed his service-wide examination for promotion to Chief Boatswain's Mate. See Compl. ¶ 9; see also id. Ex. 1 at 1, ECF No. 1-1. As a result, Mr. Lynch was placed on the Coast Guard's advancement list at number eighty-two. Compl. Ex. 1 at 1. Placement on the list ensured that he would be promoted on September 1, 1996, if (as ultimately did occur) the number of Boatswain's Mates First Class promoted to Chief Boatswain's Mates reached or exceeded eighty-two. Id.

On April 22, 1996, however, Mr. Lynch's commanding officer removed him from the advancement list. Compl. ¶ 11; id. Ex. 1 at 2. In an "administrative remark" explaining the decision, his commanding officer wrote, among other things, that Mr. Lynch's master-at-arms "duties ha[d] been the worst [he had] encountered within [his] time in service," that "supplies [we]re not inventoried," and that his "personnel ha[d] no respect for [him] as a leader/supervisor . . . and the command ha[d] lost patience with [his] inability to perform to [his] rank requirements." Compl. Ex. 1 at 2.

Shortly thereafter, on May 21, 1996, Mr. Lynch received his semi-annual evaluation, which contained a recommendation against his advancement. Id. In it, Mr. Lynch was assigned marks of two and three in a number of categories, on a scale of one to seven, with seven being the highest. Id. His commanding officer wrote that he had spoken to Mr. Lynch's executive petty officer about his dissatisfaction with Mr. Lynch's performance, and that he had previously ordered Mr. Lynch's prior executive petty officer to counsel Mr. Lynch on his performance.[2] Id. at 2–3. Additionally, he noted that Mr. Lynch had been counseled with respect to what he needed to do to earn a recommendation for advancement. Id. at 3.

On May 26, 1996, Mr. Lynch began the process of appealing his performance evaluation within the Coast Guard. Compl. ¶ 13; Compl. Ex. 1 at 3. Among other things, Mr. Lynch asserted that the "negative administrative remarks were not given to him early enough to allow time for him to improve before the end of the marking period." Compl. Ex. 1 at 3. He specifically "denied that he was counseled about his performance and stated that he was unaware of any problems with his performance until April 22, 1996." Id. at 3–4.

---

[1] The factual background of this opinion is based upon the allegations in Mr. Lynch's complaint along with the documents attached thereto, which the Court assumes to be true for purposes of the motion to dismiss.

[2] In March 1996, Mr. Lynch's executive petty officer passed away, and thus his executive petty officer during the time when he was removed from the advancement list and provided a negative performance evaluation was not Mr. Lynch's executive petty officer during the majority of the performance period under review. See Compl. Ex. 1 at 2–3, 11.

Mr. Lynch pressed these objections before various Coast Guard officials and administrative bodies over the next two years and the Coast Guard conducted an investigation regarding Mr. Lynch's complaints pursuant to Article 138 of the Uniform Code of Military Justice. Id. at 4–6. The investigation concluded that Mr. Lynch's then-current executive petty officer had a personal log reflecting that he had counseled Mr. Lynch regarding his performance on three occasions in 1995 and on one in 1996, prior to Mr. Lynch's removal from the advancement list. Id. at 5. None of Mr. Lynch's appeals was successful. Id. at 4–6.

## II.     Mr. Lynch's Application to the Board for Correction of Military Records

On January 31, 1998, Mr. Lynch retired from the Coast Guard. Compl. ¶ 2. On February 13, 2001, Mr. Lynch filed an application for the correction of his military records with the Coast Guard's Board for Correction of Military Records, which at that time was within the United States Department of Transportation.[3] Id. Ex. 1 at 1. Mr. Lynch argued that he "had never been counseled before about his declining performance prior to his removal f[ro]m the advancement list on 22 April 1996." Compl. ¶ 24. The Coast Guard responded to Mr. Lynch's application by asserting that "there is no requirement that a member be provided counseling or an opportunity to be heard before a recommendation for advancement is withdrawn," and that in any event, "the Article 138 investigation revealed that the applicant had been verbally counseled by his current supervisor." Id. Ex. 1 at 9.

The Board concluded that Mr. Lynch "failed to prove that the [commanding officer's] comments about his performance were inaccurate." Id. at 10. Nevertheless, rejecting the Coast Guard's arguments, it concluded that where "an advancement recommendation" is withdrawn "based on declining or poor performance, it appears to the Board that counseling should have occurred between the applicant and the rating chain[] prior to the [commanding officer's] action removing the applicant's name." Id. In that regard, it found no evidence that Mr. Lynch was actually counseled by his previous executive petty officer or anyone in his rating chain prior to the removal of his name from the advancement list, and it did not believe that his then-current executive officer (who was not in Mr. Lynch's rating chain at the time) had counseled Mr. Lynch about his performance prior to the April 1996 removal. Id. at 11; see also id. at 12 ("There is no credible evidence that a member of the applicant's rating chain counseled him prior to April 22, 1996."). It thus found Mr. Lynch entitled to relief and ordered that "[h]is record . . . be corrected to show that he was advanced to [Chief Boatswain's Mate] retroactive to September 1, 1996," that "[h]e shall receive back pay and allowances," and that "[t]he performance evaluation marks for the period May 21, 1996 . . . be removed from his record." Id. at 13–14.

## III.    The Secretary of Transportation's Review of the Board's Decision

On December 12, 2001, the Transportation Department's deputy general counsel reviewed the Board's decision pursuant to authority delegated by the Secretary. See Compl. Ex.

---

[3] In 2002, Congress transferred the Coast Guard and its corresponding "authorities, functions, personnel, and assets" from the Department of Transportation to the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, § 888(b), 116 Stat. 2135 (2002); see also 14 U.S.C. § 3(a) (2012).

4 at 1, ECF No. 1-4. She concluded that the Board did not "appl[y] the correct standards for finding either error or injustice," "that the Coast Guard committed neither," and that there was "no basis upon which to grant . . . relief." <u>Id.</u> In particular, the deputy general counsel found that there was "no requirement that a member whose recommendation for advancement is withdrawn be counseled beforehand." <u>Id.</u> at 2. She observed that Coast Guard regulations "impose upon subordinates the responsibility to keep apprised of what their superiors think of their performance, rather than upon superiors to keep those subordinates apprised." <u>Id.</u> The deputy general counsel thus "disapprove[d] the Board's recommended decision, and den[ied Mr. Lynch's] request to correct [his] military record." <u>Id.</u> at 3.

## IV.    Subsequent Requests for Reconsideration

More than seven years later, on April 2, 2009, the attorney who had represented Mr. Lynch before the Board wrote a letter to Janet Napolitano, the Secretary of Homeland Security.[4] Compl. ¶ 32. Mr. Lynch also wrote a letter to Secretary Napolitano at approximately the same time. <u>Id.</u> ¶ 33. Both letters challenged the Transportation Department's decision to reject the Board's recommendation. <u>Id.</u> ¶¶ 33–34; <u>see also</u> <u>id.</u> Exs. 5–6, ECF Nos. 1-5, 1-6.

On May 18, 2009, the Department of Homeland Security's acting associate general counsel for general law responded on the Secretary's behalf. Compl. ¶ 35; <u>see also</u> <u>id.</u> Ex. 7, ECF No. 1-7. He disputed Mr. Lynch's assertions of procedural error in the Transportation Department's actions. Compl. Ex. 7 at 1. He also informed Mr. Lynch that he could seek formal reconsideration from the Board, but that he would have to explain why it was in the interest of justice for the Board to waive its two-year statute of limitations on requests for reconsideration. <u>Id.</u> at 2.

Over three years later, on December 19, 2012, Mr. Lynch, through current counsel, submitted a formal request for reconsideration to the Board. <u>See</u> Compl. ¶ 36; <u>id.</u> Ex. 8, ECF No. 1-8. He sought reconsideration on the ground that the Transportation Department "had misinterpreted the law by finding that Coast Guard regulations did not require counseling by members within the rating chain." Compl. ¶ 37.

On February 26, 2013, the Department of Homeland Security's deputy general counsel responded, refusing to docket Mr. Lynch's request for reconsideration. <u>Id.</u> ¶ 38. She wrote that "[t]he request [was] not timely and [would] not be docketed by the Board." <u>Id.</u> Ex. 9 at 1, ECF No. 1-9. Additionally, she wrote that Mr. Lynch's request "fail[ed] to meet the requirement for reconsideration under 33 C.F.R. § 52.67(a)(2)." <u>Id.</u>

## V.    This Action

Five years later, on July 6, 2017, Mr. Lynch filed his complaint in this court. ECF No. 1. In it, Mr. Lynch alleges that "[t]he decision of the Secretary of Transportation, through [the deputy general counsel], to reject the recommendation of the board was contrary to substantial

---

[4] As noted, by that point in time Congress had transferred the Coast Guard from the Department of Transportation to the Department of Homeland Security.

evidence, and in violation of applicable regulations." Compl. ¶ 43. He also asserts that the deputy general counsel committed "legal error" when she found "that Coast Guard regulation[s] do not require counseling to be given by a member of the rating chain." Id. ¶ 44. Mr. Lynch further argues that the underlying Coast Guard decision to remove him from the advancement list was arbitrary and capricious. See id. ¶ 55. He asserts that he "should be retroactively upgraded to [Chief Boatswain's Mate] effective as of 1 September 1996." Id. ¶ 51. Mr. Lynch asks the Court to order the Secretary of Homeland Security to: 1) correct his records to reflect a retroactive promotion effective September 1, 1996; 2) to remove his May 1996 performance evaluation; and 3) to pay Mr. Lynch all back pay resulting from his retroactive promotion. Id. at 13. He also seeks attorneys' fees and costs. Id.

The government has filed a motion to dismiss Mr. Lynch's complaint for lack of subject matter jurisdiction in accordance with Rule 12(b)(1) of the Rules of the Court of Federal Claims. ECF No. 5. It contends that Mr. Lynch's complaint was filed more than nineteen years after his claims accrued and is therefore barred by the statute of limitations, and that, in any event, Mr. Lynch fails to identify a money-mandating source to support the Court's jurisdiction under the Tucker Act. Id. at 3.

For the reasons set forth below, the Court agrees with the government that Mr. Lynch's complaint was filed outside of the Court's six-year statute of limitations. For that reason alone, it must be dismissed.

**DISCUSSION**

Subject matter jurisdiction is a threshold matter, and the court must dismiss the case if it does not have jurisdiction. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. See Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013).

The Tucker Act empowers this court to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). While the Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights on a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

In this case, Mr. Lynch argues that the Military Pay Act, 37 U.S.C. § 204, provides an independent source of a substantive right to money damages. See Pl.'s Resp. to Def.'s Mot. to Dismiss (Pl.'s Resp.) at 10, ECF No. 8. That statute "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (quoting Sanders v. United States, 219 Ct. Cl. 285, 296–97 (1979) (en banc)). Accordingly, "the Military Pay Act 'provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay.'" Antonellis v. United States, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quoting Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004)). The government contends, however, that Mr. Lynch cannot rely upon the Military Pay Act as a basis for challenging the failure to promote him absent a "clear-cut" entitlement to the promotion, which it says does not exist on the facts of this case. Def.'s Reply in Supp. of Its Mot. to Dismiss at 7–8, ECF No. 11 (citing Smith v. Sec'y of the Army, 384 F.3d 1288, 1294–95 (Fed. Cir. 2004)).

The Court sees no need to resolve the question of the extent to which the Military Pay Act could supply a source of entitlement to damages in Mr. Lynch's case because his suit is in any event barred by the applicable statute of limitations set forth at 28 U.S.C. § 2501, which is jurisdictional in nature. See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133–34 (2008); San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1349 (Fed. Cir. 2011). That provision states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting Nager Elec. Co. v. United States, 166 Ct. Cl. 234, 240 (1966)). In other words, a claim accrues when the plaintiff becomes aware "of the existence of his injury and the acts giving rise to his claims." Id. at 1319.

Where, as here, the plaintiff asserts an entitlement to back pay based upon the military's failure to promote, the claim accrues when the military takes the action that prevents him from being promoted. Chisolm v. United States, 82 Fed. Cl. 185, 198 (stating that the plaintiff's "claim to back pay lost due to the Army's failure to promote him . . . accrued when [the Army's negative evaluation] allegedly prevented this promotion from taking place"), aff'd, 298 F. App'x 957 (Fed. Cir. 2008); see also Chisolm, 298 F. App'x at 959 (finding that plaintiff's "claims for back pay accrued when he was first denied promotion"). Time in service, however, is not included in calculating any period of limitation; accordingly, the six-year period in which a claim for back pay due to failure to promote must be filed begins upon the member's discharge. See Chisolm, 82 Fed. Cl. at 198 (citing 50 U.S.C. app. §§ 501–27); see also 50 U.S.C. § 3936(a) (current version of military service tolling statute, providing that "[t]he period of a servicemember's military service may not be included in computing any period limited by law,

regulation, or order for the bringing of any action or proceeding in a court. . . by or against the servicemember").[5]

Finally, the Court notes that the accrual of a cause of action is not delayed by seeking relief from a military corrections board. Martinez, 333 F.3d at 1304. Corrections boards are "permissive administrative remed[ies]" and are "not a mandatory prerequisite to filing a Tucker Act suit." Id. Thus, requesting relief from a correction board "does not prevent the cause of action from accruing" and does not "toll the statute of limitations pending the exhaustion of that administrative remedy." Id. Further, because a correction board decision merely addresses the underlying military determination, the decision does not create a separate cause of action from which a plaintiff may file suit within six years in the Court of Federal Claims; rather, the claimant's cause of action is only with respect to the underlying challenged decision by the military. Id. at 1311–12 (recognizing that finding otherwise would functionally (and impermissibly) toll the statute of limitations).

In this case, the statute of limitations began to run when Mr. Lynch retired on January 31, 1998. At that time, he had been aware for some sixteen months that he had been removed from the advancement list, that he had not received a promotion, and that he was being paid at a lower rate than if he had been promoted. In fact, he began challenging his removal from the advancement list while he was still in the military, then sought review by the corrections board after he retired. Nonetheless, he waited to file suit here for more than nineteen years, well beyond the expiration of the six-year statute of limitations.

The Court finds unpersuasive Mr. Lynch's argument that the accrual of his cause of action should be suspended based on what appears to be a theory of fraudulent concealment. That argument is as follows:

> Here the Government has denied Plaintiff's claims because they claim Plaintiff was counseled in writing about his deficient performance and records exists [sic] and that there exists even personal records of said counseling maintained by one of his superiors. They were never provided, thus the defendant has concealed their fraudulent actions up until the present date making it impossible for Plaintiff to ascertain the exact nature or existence of his cause of action.

Pl.'s Resp. at 8.

There are several obvious problems with this assertion. First, there is no evidence in the record that Mr. Lynch requested any documents that the Coast Guard failed to provide, much less that it fraudulently concealed records germane to Mr. Lynch's claims. More to the point, Mr. Lynch's argument regarding the alleged concealment of documents appears to be grounded in a misapprehension of the accrual suspension rule under § 2501. Thus, the accrual of a cause of

---

[5] This tolling provision, originally part of the Soldiers' and Sailors' Civil Relief Act, was revised and relocated in 2003. See Servicemembers Civil Relief Act, Pub. L. No. 108-189, § 206, 117 Stat. 2835 (2003).

action is suspended when, through no fault of his own, a plaintiff is unaware of his claims against the government. <u>Martinez</u>, 333 F.3d at 1319. To receive the benefit of this rule, which is "strictly and narrowly applied," a plaintiff "must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." <u>Id.</u> (quoting <u>Welcker v. United States</u>, 752 F.2d 1577, 1580 (Fed. Cir. 1985)).

In this case, as noted above, the relevant "act" for purposes of the accrual of Mr. Lynch's claim is the removal of his name from the advancement list. And the Coast Guard did not conceal that act from Mr. Lynch; indeed, as also noted above, he was well aware of that act at the time it occurred and he even pursued administrative grievances to challenge it both before and after he left the service.

In summary, Mr. Lynch's cause of action challenging his removal from the advancement list and the failure to promote him accrued when Mr. Lynch was removed from the advancement list, and the statute of limitations began to run when he retired from the Coast Guard on January 31, 1998. Pursuant to 28 U.S.C. § 2501, any suit challenging the Coast Guard's failure to promote him was barred after January 31, 2004. Because Mr. Lynch filed the present suit on July 6, 2017, more than thirteen years later, this Court lacks jurisdiction to hear his claims.

## CONCLUSION

For the reasons set forth above, the government's motion to dismiss is **GRANTED** and the complaint is **DISMISSED** without prejudice. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**


s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge